165 Cal.App.4th 1120 (2008)
THE PEOPLE, Plaintiff and Respondent,
v.
RUBEN GARCIA, Defendant and Appellant.
No. F052703.
Court of Appeals of California, Fifth District.
August 8, 2008.
As modified August 25, 2008.
CERTIFIED FOR PARTIAL PUBLICATION[*]
*1125 Patricia J. Ulibarri, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and John A. Bachman, Deputy Attorneys General, for Plaintiff and Respondent.

*1126 OPINION
CORNELL, J.
Ruben Garcia was committed for treatment as a sexually violent predator (SVP) under the Sexually Violent Predators Act (SVPA) as amended by Proposition 83[1] (the amended SVPA or Proposition 83). (Welf. & Inst. Code, § 6600 et seq.)[2] Garcia argues (1) the amended SVPA violates several provisions of the state and federal Constitutions; (2) the order is not supported by substantial evidence; (3) Proposition 83 violates the singlesubject rule; and (4) he received ineffective assistance of counsel. We reject each of Garcia's arguments and affirm the order of commitment.

FACTUAL AND PROCEDURAL SUMMARY
The only issue at trial was whether there was a substantial, serious, and well-founded risk that Garcia, if released, would engage in sexually violent predatory criminal behavior. (Judicial Council of Cal. Crim. Jury Instns. (2006-2007) CALCRIM No. 3454.) The experts for both Garcia and the People agreed that Garcia was a pedophile,[3] and that he had committed three qualifying offenses. Garcia's experts argued, in essence, that it was unlikely he would engage in predatory conduct because of his age and poor health. The People's experts opined that Garcia, as a pedophile with a history of molesting young children,[4] was likely to continue his predatory behavior, regardless of his age or health. The jury found the allegations of the petition true.

DISCUSSION

I. The Amended SVPA

Prior to 2006, a person found to be an SVP was committed for a two-year term. At the end of that term, the person was required to be released or another petition was required to be filed seeking a determination that the person remained an SVP. (Former § 6604, as amended by Stats. 2000, ch. 420, § 3.)
(1) In 2006 the SVPA was amended first by the Legislature and then the electorate in a substantially similar manner. The amended SVPA now provides that an individual determined to be an SVP must be "committed for an *1127 indeterminate term to the custody of the State Department of Mental Health for appropriate treatment and confinement in a secure facility."[5] (§ 6604.) Once committed, the individual must have "a current examination of his or her mental condition made at least once every year." (§ 6605, subd. (a).) A report in the form of a declaration must be filed after the examination to consider (1) whether the committed individual currently meets the definition of an SVP; (2) whether conditional release to a less restrictive alternative or unconditional release is in the best interest of the person; and (3) if release is appropriate, whether conditions can be imposed that adequately would protect the community. (Ibid.) This report must be filed with the trial court that committed the person and must be served on the prosecuting agency and the committed individual. The committed individual may retain, or the court may appoint, a qualified expert to examine him or her. (Ibid.)
If the report concludes the committed individual no longer meets the requirements of the SVPA, or that conditional release is appropriate, the Department must authorize the committed individual to petition the trial court for release.[6] (§ 6605, subd. (b).) The petition must be served on the prosecuting agency. (Ibid.) Upon receipt, the trial court shall set a probable cause hearing to consider the petition and any accompanying material. (Ibid.) If the trial court determines that probable cause exists to believe the petition has merit, it must set a hearing on the issue, at which time the committed individual is entitled to all of the constitutional protections provided at the initial commitment hearing. (Id., subds. (c), (d).) Either side may demand a trial by jury and may retain experts to examine the committed individual. (Id., subd. (d).) The burden of proof remains on the state to establish that the committed individual remains an SVP. (Ibid.)
(2) If the Department "has reason to believe" a committed individual is no longer an SVP, "it shall seek judicial review of the person's commitment." (§ 6605, subd. (f).) This obligation requires the Department to seek judicial review at any time it believes the committed individual is no longer an SVP, not just at the annual review.
Similarly, if the Department determines the committed individual's "diagnosed mental disorder has so changed that the person is not likely to commit acts of predatory sexual violence while under supervision and treatment in the community," a report so stating and recommending conditional release of *1128 the committed individual must be sent to the trial court, the county attorney, and the committed individual's attorney. (§ 6607, subd. (a).) The trial court is required to hold a hearing on the report once it is received. (Id., subd. (b).)
(3) After the first year of commitment, a committed individual may petition the trial court for conditional release or unconditional discharge without the "recommendation or concurrence" of the Department. (§ 6608, subds. (a), (c).) The committed individual is entitled to counsel and must serve the petition on the Department. (Id., subd. (a).) The trial court "shall endeavor whenever possible to review the petition and determine if it is based upon frivolous grounds and, if so, shall deny the petition without a hearing." (Ibid.)
If a hearing is appropriate, all parties must be provided with at least 30 days' notice. (§ 6608, subd. (b).) The committed individual has the burden of proving by a preponderance of the evidence that the petition should be granted. (Id., subd. (i).) If the trial court determines the committed individual would not be a danger to others, the trial court shall order the individual placed in a state-operated forensic conditional release program. (Id., subd. (d).) If the petition is denied, the committed individual may not petition the trial court again for one year. (Id., subd. (h).) Any subsequent petition shall be denied by the trial court "unless it contains facts upon which a court could find that the condition of the committed person had so changed that a hearing was warranted." (Id., subd. (a).)

II. Due Process[7]
Garcia argues the amended SVPA violates his Fourteenth Amendment right to due process. His argument rests primarily on two cases, Kansas v. Hendricks (1997) 521 U.S. 346 [138 L.Ed.2d 501, 117 S.Ct. 2072] (Hendricks) and Foucha v. Louisiana (1992) 504 U.S. 71 [118 L.Ed.2d 437, 112 S.Ct. 1780] (Foucha). Hendricks addressed the constitutionality of the SVP statute enacted by the Kansas Legislature (the Kansas Act).
The Kansas Act applies to persons convicted of a sexually violent offense. (Hendricks, supra, 521 U.S. at p. 352.) Sixty days before the anticipated release of such an offender, the custodial agency is required to notify the prosecuting attorney that the offender may meet the requirements of the Kansas Act. (Hendricks, at p. 352.) The prosecutor has 45 days to decide *1129 whether to petition the trial court for commitment pursuant to the Kansas Act. (Hendricks, at p. 352.) If the petition is filed, the trial court first determines whether there is probable cause to conclude the offender may be an SVP. (Ibid.) If the trial court concludes probable cause exists, the offender is transferred to a secure facility for evaluation. (Ibid.)
After the evaluation is complete, a trial is held, applying the beyond-a reasonable-doubt standard, to determine whether the offender is an SVP within the meaning of the statute. (Hendricks, supra, 521 U.S. at p. 353.) The offender is entitled to the assistance of counsel and mental health experts, free of charge if the offender is indigent. (Ibid.) He or she also is entitled to examine witnesses and review any documentary evidence. (Ibid.) An offender found to be an SVP is transferred to the custody of the Secretary of Social and Rehabilitation Services for "`control, care and treatment until such time as the person's mental abnormality or personality disorder has so changed that the person is safe to be at large.'" (Ibid., quoting Kan. Stat. Ann., § 59-29a07(a).)
Once committed, the offender is "afforded three different avenues of review: First, the committing court [is] obligated to conduct an annual review to determine whether continued detention [is] warranted. § 59-29a08. Second, the Secretary [of Social and Rehabilitation Services is] permitted, at any time, to decide that the confined individual's condition [has] so changed that release [is] appropriate, and [can] then authorize the person to petition for release. § 59-29a10. Finally, even without the Secretary's permission, the confined person [can] at any time file a release petition. § 59-29a11. If the court [finds] that the State can no longer satisfy its burden under the initial commitment standard, the individual [will] be freed from confinement." (Hendricks, supra, 521 U.S. at p. 353, quoting Kan. Stat. Ann., §§ 59-29a08, 59-29a10, 59-29a11.)
The Supreme Court analyzed the Kansas Act and concluded that it did not violate an offender's right to due process. At issue was the statutory definition of "mental illness" (mental abnormality or personality disorder). (Hendricks, supra, 521 U.S. at pp. 356-360.) The Supreme Court also determined that the Kansas Act was a civil proceeding, and therefore it did not violate the ex post facto or double jeopardy provision of the federal Constitution. (Hendricks, at pp. 360-371.)
Like the Kansas Act, the amended SVPA provides that an individual found to be an SVP shall be committed for an indefinite term. Both acts also provide for annual reviews by the trial court, reviews upon the recommendation of the supervising agency, and reviews upon the petition of the committed individual. Hendricks concluded these procedures did not violate a *1130 defendant's right to due process. Accordingly, like the Kansas Act, the amended SVPA would appear to comply with Garcia's right to due process.
Garcia makes several arguments to support his contention that the amended SVPA violates his right to due process. First, he claims the only time the state will bear the burden of proof is at the initial commitment hearing, unless the Department authorizes the filing of a petition. Garcia argues there is no review of the Department's discretion to authorize the filing of a petition, and therefore every commitment is a lifetime commitment.
This argument ignores the requirements of section 6605. This section requires annual examinations of an SVP's mental condition. (Id., subd. (a).) The Department must authorize a committed individual to file a petition if the Department determines his or her condition has so changed that he or she no longer is an SVP, or it is in the individual's best interest to be released conditionally. (Id., subd. (b).) At the hearing on this petition, the committed individual has the right to appointed counsel, the right to a jury trial, and the right to an appointed expert. (Id., subd. (d).) The state bears the burden of proof using the beyond-a-reasonable-doubt standard. (Ibid.) These procedures clearly meet constitutional standards.
(4) Garcia also attacks section 6608, which provides the committed individual with the right to petition for release without the consent of the Department. (Id., subd. (a).) Garcia recognizes he has the right to appointed counsel, but argues he does not have the right to an appointed expert. We disagree. While there is nothing in section 6608 regarding expert assistance, the committed individual is entitled to the appointment of an expert at the annual review pursuant to section 6605. (Id., subds. (a), (b).) This expert's assistance undoubtedly will be available to a committed individual if he or she should decide to file a petition in the absence of the Department's authorization.
Garcia also argues that he, because of the diagnosed onset of dementia, cannot take advantage of the provisions of section 6608. He, however, is entitled to assistance of counsel, who will be able to assist Garcia if he lacks the mental capacity to do so himself.
Finally, Garcia addresses the core of his due process argument. He points to the only substantive difference between the amended SVPA and the Kansas Actthe Kansas Act provides that when the committed individual petitions for release without the recommendation of the state agency providing treatment, the state bears the burden of proving beyond a reasonable doubt that the committed individual should remain committed. The amended SVPA, on the other hand, provides that under such circumstances the committed *1131 individual bears the burden of proving he or she no longer should be committed using the preponderance of the evidence standard.
The question is whether this difference violates Garcia's right to due process. Foucha does not, as argued by Garcia, provide the answer. In Foucha, the Supreme Court addressed a Louisiana statute that permitted a defendant found not guilty by reason of insanity to be detained until such time as the defendant could prove that he or she no longer was dangerous. The testimony established that Foucha no longer was mentally ill but might pose a danger if he were released. The trial court concluded Foucha had not met his burden of establishing he was no longer dangerous and ordered Foucha detained. The Supreme Court concluded the due process clause permitted commitment only if the individual were found to be dangerous and mentally ill. (Foucha, supra, 504 U.S. at pp. 77-80.)
Almost as an afterthought, Justice White addressed the issue of the constitutionality of placing the burden on the individual to prove that he or she is no longer dangerous. Justice White appears to conclude this requirement violates the individual's right to due process. (Foucha, supra, 504 U.S. at p. 86 (plur. opn. of White, J.).) This statement is, at best, dicta, because only three justices joined in this portion of the opinion.
We are not aware of any authority that suggests that placing the burden of proof on an individual who files an action somehow violates that individual's right to due process. Indeed, the statutory scheme at issue in Jones v. United States (1983) 463 U.S. 354 [77 L.Ed.2d 694, 103 S.Ct. 3043] imposed a similar requirement on defendants. The statutory scheme was directed at defendants who were found not guilty by reason of insanity for crimes committed in Washington D.C.
(5) The statutes provided that once a defendant was found not guilty by reason of insanity, a hearing was required to be held within 50 days. At the hearing, the defendant had the burden of proving he or she no longer was mentally ill or dangerous by a preponderance of the evidence standard. (Jones v. United States, supra, 463 U.S. at pp. 356-357.) In addition, the defendant was entitled to a review hearing every six months, at which he or she again bore the burden of proving by a preponderance of the evidence that he or she no longer was mentally ill or dangerous. (Id. at p. 358.) While not specifically addressing the issue, the Supreme Court expressed no reservation regarding this requirement. We emphasize that the state bears the burden of proof at the initial commitment hearing, and it bears the burden of proof if it should choose to oppose the Department's recommendation for release of a committed individual. We think this situation is analogous to a prisoner seeking release from unlawful restraint by way of a petition for a writ of *1132 habeas corpus. (In re Stier (2007) 152 Cal.App.4th 63, 81 [61 Cal.Rptr.3d 181].) In such a situation, the prisoner bears the burden of proving entitlement to relief. (In re Rosenkrantz (2002) 29 Cal.4th 616, 675 [128 Cal.Rptr.2d 104, 59 P.3d 174].) We conclude there is no significant difference when a committed individual seeks release from a commitment because he or she believes the commitment is unlawful. (Accord, People v. Boyle (2008) 164 Cal.App.4th 1266, 1279 (Boyle).)
(6) Garcia also complains that if the Department recommends the release of a committed individual, there is likely to be agreement by the state representative, and thus no adversarial process. Under these circumstances, Garcia claims the allocation of the burden of proof to the state is meaningless. We view the matter differently. The statutory scheme gives deference to the recommendations of the Department. It is the party opposing the recommendation of the Department who bears the burden of proof. There is nothing unfair or unconstitutional about such a scheme, nor does the lack of motivation to oppose the Department's recommendation render it so.
(7) Garcia next argues the trial court's authority to summarily dismiss a petition filed by a committed individual is unconstitutional. He is referring to section 6608, subdivision (a), which provides that upon receipt of a petition filed by a committed individual without the Department's recommendation, the trial court should "endeavor whenever possible to review the petition and determine if it is based upon frivolous grounds and, if so, shall deny the petition without a hearing." Garcia fails to cite any authority that suggests authorizing a trial court to dismiss a frivolous petition somehow violates an individual's right to due process. We conclude such limited authority does not render a statute unconstitutional. Presumably, if the committed individual disagrees with the trial court's ruling, he may appeal that finding. (Code Civ. Proc., § 904.1, subd. (a)(2).)
Garcia also claims that his right to due process was violated because an indefinite commitment assumes his mental disorder will continue indefinitely and, therefore, he will never be released from the commitment. We reject this argument because the amended SVPA requires annual reviews by health care professionals, which must be sent to, and reviewed by, the trial court that committed the individual. (§ 6605, subds. (a), (b).) If this review suggests that the committed individual is not an SVP, the Department must authorize the committed individual to petition the trial court for release.

III. Ex Post Facto and Double Jeopardy[8]
(8) The California Supreme Court has rejected arguments that the SVPA implicates the ex post facto and double jeopardy clauses of the state and *1133 federal Constitutions, finding that the statutory scheme is not punitive in nature. (Hubbart v. Superior Court (1999) 19 Cal.4th 1138, 1174-1179 [81 Cal.Rptr.2d 492, 969 P.2d 584].) The conclusion that the SVPA is not punitive also requires rejection of the argument that the statutory scheme implicates the double jeopardy clauses of the state and federal Constitutions. (People v. Carlin (2007) 150 Cal.App.4th 322, 348 [58 Cal.Rptr.3d 495].)
Garcia argues, however, that the 2006 amendment imposing indeterminate terms renders the statute punitive and thus violates the ex post facto and double jeopardy clauses of the state and federal Constitutions.
We begin by rejecting Garcia's argument that is based on the portion of the voter information guide to Proposition 83 that discusses "punishment." This portion of the pamphlet was not referring to the proposed amendments to the SVPA, but instead was referring to the portion of Proposition 83 that increased punishment for various offenses. The portion of the voter information guide that referred to the SVPA stated, "California is the only state, of the number of states that have enacted laws allowing involuntary civil commitments for persons identified as sexually violent predators, which does not provide for indeterminate commitments. California automatically allows for a jury trial every two years irrespective of whether there is any evidence to suggest or prove that the committed person is no longer a sexually violent predator. As such, this act allows California to protect the civil rights of those persons committed as [an SVP] while at the same time protect society and the system from unnecessary or frivolous jury trial actions where there is no competent evidence to suggest a change in the committed person." (Voter Information Guide, Gen. Elec. (Nov. 7, 2006) text of Prop. 83, § 2, p. 127.) Garcia's citation is of no value in analyzing the issue.
The heart of Garcia's argument is that an indefinite term of commitment is punitive in nature. This argument, however, was rejected in Hendricks. (See also Boyle, supra, 164 Cal.App.4th at pp. 1280-1285.) While Garcia relies on Hendricks, he fails to recognize the striking similarity of the Kansas Act to the amended SVPA as discussed above. We repeat, both acts impose indefinite terms of commitment and require annual reviews. The Supreme Court concluded that an indefinite commitment, standing alone, does not establish that the statutes are punitive. "Hendricks focuses on his confinement's potentially indefinite duration as evidence of the State's punitive intent. That focus, however, is misplaced. Far from any punitive objective, the confinement's duration is instead linked to the stated purposes of the commitment, namely, to hold the person until his mental abnormality no longer causes him to be a threat to others. Cf. Jones [ v. United States] 463 U.S. [354,] 368 [77 L.Ed.2d 694, 103 S.Ct. 3043] (noting with approval that `because it is impossible to predict how long it will take for any given individual to recover *1134 [from insanity] ... or indeed whether he will ever recoverCongress has chosen ... to leave the length of commitment indeterminate, subject to periodic review of the patient's suitability for release'). If, at any time, the confined person is adjudged `safe to be at large,' he is statutorily entitled to immediate release. Kan. Stat. Ann., § 59-29a07 (1994).
"Furthermore, commitment under the Act is only potentially indefinite. The maximum amount of time an individual can be incapacitated pursuant to a single judicial proceeding is one year. [Kan. Stat. Ann.,] § 59-29a08. If Kansas seeks to continue the detention beyond that year, a court must once again determine beyond a reasonable doubt that the detainee satisfies the same standards as required for the initial confinement. Ibid. This requirement again demonstrates that Kansas does not intend an individual committed pursuant to the Act to remain confined any longer than he suffers from a mental abnormality rendering him unable to control his dangerousness." (Hendricks, supra, 521 U.S. at pp. 363-364.)
The second paragraph quoted above refers to Kansas Statute Annotated section 59-29a08, which provides that a committed individual must have a current examination of his or her mental condition on a yearly basis. The report of this examination must be forwarded to the trial court that committed the individual. This court must conduct an annual review of the committed individual's status. If the court determines "probable cause exists to believe that the person's mental abnormality or personality disorder has so changed that the person is safe to be placed in transitional release, then the court shall set a hearing on the issue." (Kan. Stat. Ann., § 59-29a08(c).)
Under the amended SVPA, the Department is required to conduct an examination of the current mental condition of each committed individual at least once every year. (§ 6605, subd. (a).) The annual report "shall include consideration of whether the committed person currently meets the definition of a sexually violent predator and whether conditional release to a less restrictive alternative or an unconditional release is in the best interest of the person and conditions can be imposed that would adequately protect the community." (Ibid.) This report shall be in the form of a declaration and filed with the trial court that committed the individual. (Ibid.)
If the Department determines that the person no longer meets the definition of an SVP, or conditional release is appropriate, the Department must authorize the committed individual to file a petition with the trial court. (§ 6605, subd. (b).) Upon receipt of the petition, the trial court must order a probable cause hearing, at which time it must determine if probable cause exists "to believe that the committed person's diagnosed mental disorder has so changed that he or she is not a danger to the hearth and safety of others *1135 and is not likely to engage in sexually violent criminal behavior if discharged, then the court shall set a hearing on the issue." (Id., subd. (c).)
As is evident, under both the Kansas Act and the amended SVPA, a committed individual is evaluated on an annual basis, and a report of that evaluation is sent to the trial court for review. A hearing is held if there is reason to believe the committed individual should be released. The statutory schemes differ slightly because the Kansas Act requires the trial court to determine whether probable cause exists to release the committed individual. Under the amended SVPA, however, if the Department determines the committed individual meets certain criteria, it must authorize the filing of a petition for release. The trial court reviews the petition to determine if probable cause exists to release the committed individual. We find this difference inconsequential and clearly it does not transform the amended SVPA into a punitive statute. Because the amended SVPA is a civil commitment statute, it does not violate either the double jeopardy or ex post facto clause of the state and federal Constitutions.

IV. Equal Protection[9]
Garcia claims he was denied equal protection of the laws as required by both the federal and state Constitutions because he was committed for an indeterminate term, while other individuals committed under various other civil commitment statutes received fixed term commitments.
(9) The equal protection clause of both the state and federal Constitutions ensures that individuals who are similarly situated with respect to the laws receive like treatment. (Cooley v. Superior Court (2002) 29 Cal.4th 228, 253 [127 Cal.Rptr.2d 177, 57 P.3d 654].) Individuals who are not similarly situated need not be treated equally. (People v. Green (2000) 79 Cal.App.4th 921, 924 [94 Cal.Rptr.2d 355].) The first step in an equal protection analysis, therefore, is to determine if the two identified groups are similarly situated. (People v. Hofsheier (2006) 37 Cal.4th 1185, 1199 [39 Cal.Rptr.3d 821, 129 P.3d 29].) Our inquiry is not whether the two groups are similarly situated for all purposes, but whether they are similarly situated for the purposes of the law that is being challenged. (Ibid.)
Garcia argues that all individuals who have been committed under civil commitment statutes are similarly situated. Thus, he claims that those committed under the amended SVPA are similarly situated with those committed under the Mentally Disordered Offender Act (Pen. Code, § 2960 et seq.), and individuals found not guilty by reason of insanity (id., § 1026 et seq.).
*1136 (10) This claim was made, and rejected, in the recently published case of Boyle, supra, 164 Cal.App.4th at pages 1286-1288. Boyle concluded that SVP's are not similarly situated with other individuals who are committed civilly because (1) the group has an extremely high rate of recidivism, resulting in a high danger to the community; (2) the group commits predatory offenses, that is, offenses against individuals with whom the offender does not have a relationship; and (3) such individuals require long-term treatment with only a limited likelihood of cure. (Ibid.) We also note the amended SVPA is directed at a very narrow group of individuals (those convicted of specific sex crimes with a mental disorder that predisposes them to commit such crimes). We agree with Boyle that SVP's are not similarly situated with other individuals who have been committed under different civil commitment statutes. Accordingly, we reject Garcia's equal protection challenge to the amended SVPA.

V. Cruel and Unusual Punishment

(11) Garcia next argues that his indeterminate commitment constitutes cruel and unusual punishment under both the state and federal Constitutions. The Eighth Amendment's cruel and unusual punishment clause prohibits those convicted of crimes from being physically punished by barbarous methods and ensures the penal measures embody concepts of dignity, humanity and decency. (Estelle v. Gamble (1976) 429 U.S. 97, 102-103 [50 L.Ed.2d 251, 97 S.Ct. 285]; Roe v. Crawford (8th Cir. 2008) 514 F.3d 789, 799.)
(12) We reject Garcia's claim because he is not a prisoner, and he is not being punished. He has been committed in a civil proceeding for treatment of a mental disorder that renders him dangerous to others. While we recognize that Garcia's commitment results in a loss of freedom, the Eighth Amendment is inapplicable.

VI. Right to Petition the Trial Court

(13) "The First Amendment to the United States Constitution protects the right `to petition the Government for a redress of grievances.' This includes the right of access to the courts. [Citation.]" (Mejia v. City of Los Angeles (2007) 156 Cal.App.4th 151, 162 [67 Cal.Rptr.3d 228].) Garcia claims that his right to petition the courts has been infringed by the amended SVPA because he can file a petition pursuant to section 6605 only if authorized by *1137 the Department, and he is not provided free mental health exams pursuant to the provisions of section 6608. Garcia has not provided any authority to support his argument.
We repeat what we have stated already. Pursuant to section 6608, Garcia can petition the trial court for release without anyone's consent. He is entitled to the assistance of counsel in these proceedings. He is not prohibited from the use of expert witnesses, including the witnesses who may have been retained pursuant to section 6605. His petition is subject to dismissal only if it is based on frivolous grounds, an extremely narrow and limited basis for dismissal. We cannot think how any of these provisions can be interpreted as violating the First Amendment.

VII. The Single-subject Rule

Article II, section 8, subdivision (d) of the California Constitution states: "An initiative measure embracing more than one subject may not be submitted to the electors or have any effect." Garcia claims that Proposition 83 violated this provision because "it combined too many disparate topics without a common purpose under a broad and amorphous theme of dealing with sex offenders."
(14) "`In articulating the proper standard to guide analysis in this context, the governing decisions establish that "`"[a]n initiative measure does not violate the single-subject requirement if, despite its varied collateral effects, all of its parts are `reasonably germane' to each other," and to the general purpose or object of the initiative.'" [Citation.] As we recently have explained, "the single-subject provision does not require that each of the provisions of a measure effectively interlock in a functional relationship. [Citation.] It is enough that the various provisions are reasonably related to a common theme or purpose." [Citation.] Accordingly, we have upheld initiative measures "`which fairly disclose a reasonable and common sense relationship among their various components in furtherance of a common purpose.' [Citation.]" [Citation.]' [Citation.] The common purpose to which the initiative's various provisions relate, however, cannot be `"so broad that a virtually unlimited array of provisions could be considered germane thereto and joined in this proposition, essentially obliterating the constitutional requirement." [Citation.]' [Citation.]" (Manduley v. Superior Court (2002) 27 Cal.4th 537, 575 [117 Cal.Rptr.2d 168, 41 P.3d 3].)
Keeping that standard in mind, we turn to provisions of Proposition 83, which made the following changes to existing law:
(1) Penal Code section 209, subdivision (b)(1), penalizes kidnapping with the intent to commit various crimes by imprisonment for life with the *1138 possibility of parole. Prior to Proposition 83, the list included kidnapping with the intent to commit sexual penetration, in violation of Penal Code section 289. Proposition 83 amended former subdivision (b)(1) of Penal Code section 209 to include kidnapping with the intent to violate any provision of Penal Code section 289 and added kidnapping with the intent to violate Penal Code sections 264.1 (rape in concert) or 288 (lewd and lascivious acts). (Id., § 209, subd. (b)(1); see Prop. 83, § 3, approved Nov. 7, 2006, eff. Nov. 8, 2006.)
(2) Penal Code section 220 was amended to add a provision specifically dealing with assaults committed during a residential burglary. The section now provides that any person who commits an assault during a residential burglary with the intent to commit rape, sodomy, oral copulation, or any violation of Penal Code sections 264.1, 288, or 289 (forcible sexual penetration) shall be sentenced to a term of life in prison with the possibility of parole. (Id., § 220, subd. (b); see Prop. 83, § 4, approved Nov. 7, 2006, eff. Nov. 8, 2006.)
(3) Penal Code section 269 (aggravated sexual assault of a child) was amended in several respects. This section criminalizes sex crimes committed on a child under the age of 14. Prior to Proposition 83, the section applied only if the child was under 14 and 10 or more years younger than the defendant. Proposition 83 changed the age discrepancy to seven or more years. Next, the list of sex crimes that were included in Penal Code section 269 was increased to include rape, in violation of Penal Code section 261, subdivision (a)(6). Finally, the penalty for violation of Penal Code section 269 was increased to provide that consecutive sentences must be imposed if the crimes involve separate victims or the same victim on separate occasions.[10] (Id., § 269, subds. (a)(1), (b), (c); see Prop. 83, § 5, approved Nov. 7, 2006, eff. Nov. 8, 2006.)
(4) Section 288.3 was added to the Penal Code. This code section criminalizes contacts or communications with a minor made with the intent to commit various sex offenses.[11] The penalty was set at the same term as an *1139 attempt to commit the crime. A second violation of the statute required an additional term of five years. (Pen. Code, § 288.3, subds. (a), (c); see Prop. 83, § 6, approved Nov. 7, 2006, eff. Nov. 8, 2006.)
(5) The fines required by Penal Code section 290.3 (fines for failing to register as a sex offender (id., § 290)) were increased, and a portion of those fines were designated to defray the costs of the global positioning system established elsewhere in the proposition. (Id., § 290.3, subds. (a), (d); see Prop. 83, § 7, approved Nov. 7, 2006, eff. Nov. 8, 2006.)
(6) Penal Code section 311.11 was amended to provide that any violation of subdivision (a) of this section was a felony. The penalty for the first or second offense was not changed. Proposition 83, however, increased the number of prior offenses that would provide for the same penalty as a second offense. (Pen. Code, § 311.11, subds. (a), (b); see Prop. 83, § 8, approved Nov. 7, 2006, eff. Nov. 8, 2006.)
(7) Penal Code section 667.5 (enhancements for prior prison terms) was amended in various respects, none of which were a significant change to existing law. (Prop. 83, § 9, approved Nov. 7, 2006, eff. Nov. 8, 2006.)
(8) Penal Code section 667.51, subdivision (a) (enhancement for violation of Pen. Code, §§ 288, 288.5) was amended to provide that the enhancement provided there would be imposed on any conviction, instead of only on those convictions that occurred within 10 years of a prior prison sentence. In addition, language that limited the imposition of a 15-year-to-life sentence for a third conviction of specified offenses was eliminated, thus increasing the circumstances when such a sentence could be imposed. (Id., § 667.51, subds. (a), (c); see Prop. 83, § 10, approved Nov. 7, 2006, eff. Nov. 8, 2006.)
(9) Penal Code section 667.6 was amended to simplify the section, but does not appear to increase the terms of the enhancements. A fine up to $20,000 was added for anyone sentenced under the provisions of the section. (Id., subd. (f); see Prop. 83, § 11, approved Nov. 7, 2006, eff. Nov. 8, 2006.)
(10) Penal Code section 667.61 was amended. Most of the amendments did not effect a substantive change in the existing statute. The list of crimes to which the enhancement could apply, however, was increased to include a violation of Penal Code sections 288a and 288.5 (continuous sexual abuse of *1140 a child). The circumstances under which the enhancement could apply were increased. (Id., 667.61, subds. (c)(7), (9), (d)(5); see Prop. 83, § 12, approved Nov. 7, 2006, eff. Nov. 8, 2006.)
(11) Penal Code section 667.71 was amended to eliminate provisions that would preclude imposition of a 25-year-to-life sentence for habitual sexual offenders, and a provision was added to prevent the trial court from striking the enhancement. (Id., subds. (b), (d); see Prop. 83, § 13, approved Nov. 7, 2006, eff. Nov. 8, 2006.)
(12) Prior to Proposition 83, Penal Code section 1203.06 prevented a trial court from placing a defendant convicted of certain crimes on probation, and also prevented the trial court from suspending the defendant's sentence. Proposition 83 amended this statute to prevent the trial court from striking the finding that a defendant fell within the provisions of the statute and added violations of Penal Code sections 288, 288.5, 286, 288a, 289, 264.1, and 269 to the coverage of the statute. Other changes to the statute do not appear to effect a substantive change in the law. (Id., § 1203.06, subd. (a)(1); see Prop. 83, § 14, approved Nov. 7, 2006, eff. Nov. 8, 2006.)
(13) Penal Code section 1203.075 (penalties for inflicting great bodily injury) was amended to increase the offenses to which the section would apply. The added offenses include violations of Penal Code sections 288, 264.1, 288.5, and 269. (Id., § 1203.075, subd. (a); see Prop. 83, § 16, approved Nov. 7, 2006, eff. Nov. 8, 2006.)
(14) Penal Code section 3000 (length of parole) was amended to provide that the parole period for any person found to be an SVP would be tolled until such time as that person no longer is an SVP. The parole period for defendants who received a life sentence was increased from five years to 10 years. (Id., subds. (a)(4), (b)(3); see Prop. 83, § 17, approved Nov. 7, 2006, eff. Nov. 8, 2006.)
(15) Section 3000.07 was added to the Penal Code. (Prop. 83, § 18, approved Nov. 7, 2006, eff. Nov. 8, 2006.) Penal Code section 3004 was amended to provide for monitoring of registered sex offenders with a global positioning system. (Id., subd. (b); see Prop. 83, § 18, approved Nov. 7, 2006, eff. Nov. 8, 2006.)
(16) Penal Code section 3003.5 was amended to prohibit a registered sex offender from residing within 2,000 feet of any school or park. (Id., subd. (b); see Prop. 83, § 21, approved Nov. 7, 2006, eff. Nov. 8, 2006.)
*1141 (17) A provision was added to Penal Code section 12022.75 enhancing the punishment for an offender who administers a controlled substance during the commission of various sex offenses. (Id., subd. (b)(1); see Prop. 83, § 23, approved Nov. 7, 2006, eff. Nov. 8, 2006.)
(18) In addition to the above provisions, Proposition 83 amended the SVPA, the pertinent portions of which are discussed above.
(15) Upon review, it appears that Proposition 83 increased punishment for sex offenses by increasing the term provided and increasing the type of sex offenses that would trigger enhancements and longer sentences. It also provided for increased monitoring of registered sex offenders and restrictions on where they could reside. Finally, Proposition 83 addressed SVP's by delaying their term of parole until they were released and providing for indeterminate terms of commitment.
The obvious common thread running throughout this scheme is that the entire proposition addressed sex offenders: their punishment, their parole, the registration requirement, and their status as SVP's, if applicable. Contrary to Garcia's bold proclamation, we think that these topics reasonably are germane to each other. As stated in the finding and declarations of the proposition, sex offenders prey on the most innocent in society, are most likely to reoffend, and the least likely to be cured. Each provision as enacted is directed at protecting the public from those individuals who commit such crimes and punishing those individuals so they cannot commit such crimes in the future.
Garcia focuses on the civil nature of SVP proceedings and claims the single-subject rule is violated because both civil and criminal issues were included in Proposition 83, as well as the regulatory provisions pertaining to those required to register as sex offenders. While different types of statutes were involved, Garcia's focus is misplaced. The topic of each amendment was sexual offenses and offenders. We do not think the different purposes of the various statutes are dispositive.
VIII., IX.[*]
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*1142 DISPOSITION
The order committing Garcia as an SVP is affirmed.
Levy, Acting P. J., and Dawson, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts VIII. and IX. of the Discussion.
[1] On November 7, 2006, California voters approved Proposition 83, also known as Jessica's Law, which made substantial changes to the SVPA, effective November 8, 2006.
[2] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.
[3] Garcia presented the testimony of Theodore Donaldson, who believes it is difficult to diagnosis anyone, including Garcia, as a pedophile. The other three experts agreed that Garcia was a pedophile. In closing argument counsel conceded that Garcia was a pedophile.
[4] Garcia's youngest victim was four years old.
[5] The amended SVPA makes reference to the State Department of Mental Health (the Department) and the Director of Mental Health. To ease the reader's task, we will refer only to "the Department," disregarding the specific statutory reference as it is not relevant for the resolution of the issues before us.
[6] Release may be conditional or unconditional, depending on the findings and recommendations of the Department.
[7] On July 9, 2008, the Supreme Court accepted for review the case of People v. McKee (2008) 160 Cal.App.4th 1517 [73 Cal.Rptr.3d 661], review granted July 9, 2008, S162823. The issues in this case are whether the amended SVPA violates the committed individual's right to due process and equal protection and whether it violates the constitutional prohibition of ex post facto laws.
[8] See footnote 7, ante, at page 1128.
[9] See footnote 7, ante, at page 1128.
[10] Other changes also were made to Penal Code section 269 that do not appear to change the crimes punishable under the statute.
[11] The offenses are violations of Penal Code sections 207 (kidnapping), 209 (kidnapping for ransom, rape, or robbery), 261 (rape), 264.1 (rape in concert), 273a (willful harm to a child), 286 (sodomy), 288 (lewd or lascivious acts), 288a (oral copulation), 288.2 (harmful matter sent to a minor with the intent to seduce), 289 (forcible sex penetration), 311.1 (transportation or sale of obscene matter involving a minor), 311.2 (transportation or sale of matter depicting minor having sex), 311.4 (employment of minor for purpose of depicting minor having sex), and 311.11 (possession of matter depicting minor having sex).
[*] See footnote, ante, at page 1120.