Filed 1/27/26  P. v. Zamora CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SANTIAGO MANUEL ZAMORA,<br><br>    Defendant and Appellant. | F089100<br><br>(Super. Ct. No. 11CMS4083)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kings County.  Robert S. Burns, Judge.

William W. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Julie A. Hokans and Robert Gezi, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury found defendant Santiago Manuel Zamora guilty of second degree murder and found four associated firearm enhancements true.  The trial court sentenced

defendant to 15 years to life for the murder and 25 years to life for a Penal Code section 12022.53, subdivision (d) firearm enhancement; the court stayed the sentence on the other three firearm enhancements. In 2022, we affirmed defendant's conviction and judgment. However, we remanded for resentencing due to then-recent amendments to section 1385,[1] which governs a court's discretion to dismiss sentencing enhancements. On remand, the trial court declined to dismiss any firearm enhancements, reimposing the original sentence.

Defendant now appeals, asserting the trial court prejudicially erred at resentencing by (I) limiting its inquiry to section 1385, given that there had been additional ameliorative changes in law; and (II) refusing to dismiss the four firearm enhancements under section 1385. We affirm.

## PROCEDURAL HISTORY

On March 15, 2016, the Kings County District Attorney filed a first amended information charging defendant with the murder of Isaac Donez under section 187, subdivision (a). The information also alleged defendant personally used a firearm in the commission of a felony (§ 12022.5, subd. (a)), did so in the commission of a murder (§ 12022.53, subd. (b)), personally and intentionally discharged a firearm in the commission of a murder (§ 12022.53, subd. (c)), and in doing so caused Donez's death (§ 12022.53, subd. (d)).

On July 18, 2019, the jury found defendant guilty of second-degree murder and found all four firearm enhancements true. On October 4, 2019, the court sentenced defendant to 15 years to life for the murder. The court also sentenced defendant to 25 years to life for the section 12022.53, subdivision (d), enhancement and stayed the sentence of the remaining firearm enhancements. The court imposed a restitution fine of

---

[1] Undesignated statutory references are to the Penal Code.

$10,000 (§ 1202.4, subd. (b)) and a suspended parole revocation restitution fine of $10,000 (§ 1202.45).

On appeal, this court affirmed the judgment, rejecting multiple arguments of defendant regarding his conviction. (See *People v. Zamora* (July 27, 2022, F080140) [nonpub. opn.] (*Zamora I*).) However, we remanded for resentencing, given the then-recent amendment to section 1385 governing a trial court's sentencing discretion. On remand, the trial court addressed its section 1385 discretion, declined to strike the section 12022.53, subdivision (d) enhancement, and reimposed the original sentence of 15 years to life plus 25 years to life.

Defendant timely appealed.

## FACTUAL SUMMARY

The facts and circumstances leading to Isaac Donez's murder are known to the parties, as extensively recounted in this court's prior opinion. Briefly, on November 28, 2011, Donez and others confronted defendant at a house party over their belief that defendant was abusing his then-girlfriend, a relative of Donez. A verbal altercation between Donez's group and defendant ensued, leading defendant to pull a gun, cock it, and hold it to the left side of Donez's body. Donez's stepbrother told defendant to put the gun down so the two could fight. However, another individual helped defuse the situation, the stepbrother apologized to the homeowner, and the group began walking away from defendant and back to their car. Defendant pursued, exchanging words with Donez. Defendant then fired multiple shots, and Donez fell to the ground. Defendant fled the scene in a vehicle. Members of Donez's group took Donez to the hospital, but he succumbed to his injuries from two bullet wounds in his back. Defendant fled to Mexico and was arrested in 2015; at his arrest, he attempted to hide on a rooftop, then provided a false name to officers.

**DISCUSSION**

## I. THE TRIAL COURT'S LIMITED RESENTENCING

Defendant first argues remand is necessary, again, because the trial court "failed to follow this court's direction on remand by conducting only a limited hearing rather than a full resentencing." (Boldface and capitalization omitted.) Defendant contends the trial court should have considered Assembly Bill No. 124 (2021–2022 Reg. Sess.) (Assembly Bill 124), which modified the trial court's discretion under section 1170; Assembly Bill No. 518 (2021–2022 Reg. Sess.) (Assembly Bill 518), which modified the trial court's discretion under section 654; and defendant's 2024 pro. per. filing regarding his ability to pay a restitution fine.

Though the trial court was not bound by our limited remittitur, we find defendant ultimately forfeited these issues.

### A. Additional Background

Assembly Bill 124 modified section 1170 to create a rebuttable presumption in favor of the lower term for a defendant who was a "youth" at the time of the crime unless the court finds "the aggravating circumstances outweigh the mitigating circumstances" under an "interests of justice" framework. (§ 1170, subd. (b)(2)(B).) Assembly Bill 518 modified section 654 to grant trial courts new discretion to punish an act or omission punishable under different statutes with a lesser term rather than being required to impose a term under the law that provided for the longest potential term of imprisonment. (§ 654, subd. (a).) Each of these modifications became effective January 1, 2022.

In his 2022 appeal, defendant raised the issue of the trial court's discretion concerning defendant's sentence on the section 12022.53, subdivision (d) enhancement. We briefly addressed the issue in our July 27, 2022, opinion, reasoning in full:

> "In supplemental briefing, [defendant] contends that remand is required to allow the trial court discretion to strike one or more sentencing enhancements, pursuant to section 1385. In 2021, the Legislature enacted Senate Bill No. 81, which amended section 1385 to specify factors that the

4.

trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interests of justice. (Stats. 2021, ch. 721, § 1.) Most notably, under the newly enacted subdivision (c)(2)(B) of section 1385, if '[m]ulitple enhancement[s] are alleged in a single case,' 'all enhancements beyond a single enhancement shall be dismissed.' And in subdivision (c)(2)(C) of section 1385, if '[t]he application of an enhancement could result in a sentence of over 20 years,' the trial court 'shall … dismiss[ ]' the enhancement. These requirements 'shall apply to sentencings occurring after the effective date of' Senate Bill No. 81. (Stats. 2021, ch. 721, § 1, enacting § 1385, subd. (c)(7).) [¶] Because [defendant's] case is not yet final and the amendment could lessen any punishment [citation], any resentencing in this case will take place after Senate Bill No. 81 became effective on January 1, 2022. As such, we agree with [defendant] that the court must apply the new law in any such proceeding."

The court's concluding disposition stated: "The matter is remanded for resentencing. The judgment is otherwise affirmed."

After we issued our opinion and the case was remanded, defendant filed a motion for reconsideration, in pro. per., asserting an inability to pay the $10,000 restitution fine and other court-imposed fees. On June 10, 2024, the trial court returned defendant's filing to him because he was represented by counsel, and this issue was not raised by counsel upon its return to defendant. Thereafter, the parties briefed the issue of the court's discretion to dismiss the four firearm enhancements under section 1385, and the court held a resentencing hearing on November 15, 2024. The trial court began by rejecting the prosecutor's request for Donez's family to speak because the proceeding was "not a full resentencing hearing; it is simply on the modification of 1385 …." Thereafter, the parties presented their arguments on whether the firearm enhancements should be dismissed under section 1385; the court rejected defendant's argument and reimposed the same sentence.

### B. Standard of Review

We review de novo whether the trial court correctly followed the remand directions contained in our previous opinion. (*Ayyad v. Sprint Spectrum, L.P.* (2012)

210 Cal.App.4th 851, 859.)  The scope of the superior court's jurisdiction as defined by a remittitur does not prevent the retroactive application of ameliorative laws.  (*People v. Lopez* (2025) 17 Cal.5th 388, 396 (*Lopez*).)

### C.     Analysis

#### 1.     Material Variance from the Court's Prior Opinion

Generally speaking, on remand, "the trial court is revested with jurisdiction of the case, *but only to carry out the judgment as ordered by the appellate court*."  (*People v. Dutra* (2006) 145 Cal.App.4th 1359, 1366.)[2]

Here, a review of our 2022 opinion makes clear that the scope of our remand order only concerned the trial court's then-new discretion to strike the firearm enhancements under section 1385.  The entirety of our remand analysis was contained in one brief paragraph, where we noted the Legislature's 2021 amendments to section 1385, the fact that defendant's case was not yet final, and the possibility that the legislative amendment could lessen any punishment.  We concluded by stating "that the court must apply *the new law in any such proceeding*."  (Italics added.)  Thus, our remand instructions focused solely on section 1385.

Defendant argues the trial court should have read our opinion's concluding disposition as directing a full resentencing because it did not limit the scope of resentencing.  Defendant correctly notes our disposition in the prior opinion stated:  "The matter is remanded for resentencing.  The judgment is otherwise affirmed."  However, the trial court must read our remand directions in conjunction with the prior opinion as a whole.  (*People v. Dutra, supra,* 145 Cal.App.4th at p. 1368 ["If a remittitur is *ambiguous*

---

[2]     As noted below, the California Supreme Court recently clarified that "[t]he scope of the superior court's jurisdiction as defined by a remittitur does not prevent the retroactive application of ameliorative laws." (*Lopez, supra,* 17 Cal.5th at p. 396.)  We recite the standard from *Dutra* here to address defendant's main argument and to note that the trial court appears to have been attempting to faithfully follow our 2022 remand instructions—even though this issue is immaterial in light of *Lopez*.

the trial court can interpret it in light of the law and the appellate opinion to determine its duties."].) Any ambiguity in the language of our disposition must be read in conjunction with the analysis in the prior opinion, which focused solely on section 1385. Thus, we do not find the trial court failed to follow our previous instructions. (See *Ayyad v Sprint Spectrum, L.P., supra,* 210 Cal.App.4th at p. 860.)

### 2. Retroactivity of Ameliorative Changes in Sentencing Statutes

Despite our finding that the trial court correctly read our remand instructions as being focused on section 1385, this is not the end of the inquiry. "[N]ew laws that reduce the punishment for a crime are presumptively to be applied to defendants whose judgments are not yet final." (*People v. Padilla* (2022) 13 Cal.5th 152, 158.) When that presumption applies, the retroactivity rule extends to all " 'nonfinal judgments.' " (*Ibid.*) And as the California Supreme Court recently clarified, "[t]he scope of the superior court's jurisdiction as defined by a remittitur does not prevent the retroactive application of ameliorative laws." (*Lopez, supra*, 17 Cal.5th at p. 396.)

Here, defendant's case is not yet final, as the " 'criminal prosecution or proceeding' brought against defendant was not complete when the ameliorative legislation at issue took effect" in 2022. (*People v. Esquivel* (2021) 11 Cal.5th 671, 678; see also *Lopez, supra,* 17 Cal.5th at p. 397 ["[W]hen any aspect of a case is on appeal from sentencing, the 'case' or 'prosecution' has not been reduced to final judgment …."].) Thus, the scope of our prior remittitur does not prevent defendant from gaining the benefit of other ameliorative legislation as applied to his sentence. (*Lopez, supra,* at p. 396.)

### 3. Forfeiture

Defendant argues that at the 2024 resentencing hearing, the trial court should have considered an ameliorative amendment to section 1170 as related to his youth at the time of the murder; an ameliorative amendment to section 654 providing new discretion for a trial court to choose, in this context, which three of the four firearm enhancements would

7.

be stayed and which one would not; and whether defendant had the ability to pay the restitution fine ordered at his original sentence, a fine that was stayed pending his successful completion of probation. We find defendant forfeited each of these issues by failing to raise them in prior proceedings. (*In re Stier* (2007) 152 Cal.App.4th 63, 74 (*Stier*) [reminding that " 'forfeiture' " describes "the loss of the right to raise an issue on appeal due to the failure to pursue it in the trial court"].)

Recently, the First District Court of Appeal confronted a similar situation, where amendments to the relevant sentencing scheme went into effect before the defendant was sentenced. (*People v. Achane* (2023) 92 Cal.App.5th 1037, 1044–1047 (*Achane*).) The court held that by failing to raise the discretionary, ameliorative matter before the trial court at sentencing, the defendant forfeited his appellate claim that he was entitled to have the court consider a lower term sentence. (*Ibid.*) Here, the amendments to sections 1170 and 654 brought about by Assembly Bills 124 and 518, respectively, each went into effect on January 1, 2022. (See Stats. 2021, ch. 695, § 5; Stats. 2021, ch. 441, § 1.) Defendant could have raised both issues in the previous appeal before this court in 2022, either in his reply brief or in a supplemental brief—much in the same way he briefed the section 1385 issue that formed the basis of our 2022 remand. Further, defendant filed a sentencing brief prior to the 2024 resentencing hearing and raised neither the youth issue under section 1170 nor the court's then-new discretion under section 654. Defendant's arguments on sections 1170 and 654 are forfeited. (*Achane, supra,* at p. 1047; see *Stier, supra,* 152 Cal.App.4th at p. 74.)

As to defendant's asserted inability to pay the restitution fine, defendant cites to his pro. per. submission filed with the trial court after our 2022 remand to argue that he attempted to raise this issue before the trial court. Defendant has been represented by appointed counsel throughout the lower court proceedings, and the trial court therefore correctly rejected his pro. per. filing. (*In re Walker* (1976) 56 Cal.App.3d 225, 228 ["Once appointed, the attorney has the exclusive right to appear and control court

proceedings as long as fundamental rights are not denied; neither the party himself nor another attorney can be recognized in the conduct or disposition of the case."]; *People v. Scott* (1998) 64 Cal.App.4th 550, 571.)  Though defendant argues it would have been futile to raise the issue at the resentencing because there was "no occasion for [him] to properly raise his motion or provide supporting evidence," he could have raised the issue in his 2022 appeal to this court, to the trial court at the original sentencing proceeding in 2019, or—through his attorney by prehearing motion—at the 2024 resentencing hearing. Defendant's argument is forfeited. (*Achane, supra,* 92 Cal.App.5th at p. 1047; see *Stier, supra,* 152 Cal.App.4th at p. 74.)

II.    DISMISSAL OF THE FIREARM ENHANCEMENTS UNDER SECTION 1385

Defendant next argues the trial court abused its discretion when declining to strike the four firearm enhancements, arguing substantial evidence does not support the court's "public safety" and "interests of justice" rationales.  Defendant requests his sentence be vacated and the matter be remanded for resentencing.  We disagree.

*A.    Additional Background*

At the 2024 resentencing, the trial court noted the parties' written submissions, filed prior to the hearing, regarding the court's newly authorized discretion under section 1385.  The court heard testimony from defendant asserting that he was attempting to lead a lawful life and was no longer violent; the court also collected evidence concerning defendant's having attended a drug rehabilitation clinic in Mexico in 2013, having earned education credits while in prison, and the circumstances underlying his multiple rule violation reports while in prison.  The court noted defendant was subject to multiple firearm enhancements and an enhancement that would result in a sentence of 20 years or more, implicating section 1385, subdivision (c)(2)(B) and (C).  The court stated it gave "great weight to [those] mitigating factors," but did not "find it in the interest of justice to strike [the firearm] enhancements."  It later concluded that defendant "poses a danger to the public" if any of the enhancements were dismissed.

9.

For support, the court cited facts from the night of the murder, including that defendant escalated the encounter by pulling a gun, continued to escalate (after others deescalated) by following Donez to his car, and shot Donez in the back after a third attempt to deescalate the situation by others. The court also cited the fact that defendant fled the scene and evaded arrest for five years, after trying to hide from the police on a rooftop and providing a false name. Then, the court discussed defendant's "commission of perjury during the jury trial," specifically concerning the court's belief that defendant fabricated a story about Donez shouting a gang-related epithet—despite no mention of any gang issues in any prior hearing. The court believed defendant's "last minute" assertion "was an obvious attempt of manipulation … so that [defendant] could try to dirty up the victim and victim's family to get the jury to not care …." The court found this act was "consistent with [defendant's uncredible] testimony … when he referred to the officers fabricating things against him on two different [rule violation reports] …." The court concluded defendant's "post murder conduct seems to be consistent with his pre murder conduct." The following exchange then occurred:

"THE DEFENDANT: What about when the cops lie, your Honor?

"THE COURT: Sir, you don't get to interrupt me.

"THE DEFENDANT: I just want to ask when the cops -- like you never corrected them, you want to correct me though.

"THE COURT: I don't believe they lied.

"THE DEFENDANT: Okay, it is on paper. The truth will triumph, your Honor.

"THE COURT: The record will reflect [defendant] is shouting out as the Court is attempting to provide his ruling, which is consistent with the Court's observations. That [defendant] wants to run everything and be in charge. And that [defendant] wants to do what he wants to do, which is inconsistent with his testimony here that he is no longer a violent person, and that he is rehabilitated in some sense. [¶] His post conduct demonstrates a complete lack of remorse for his conduct, or any empathy

10.

for the victim or the victim's family, further indicating that he is a danger to the public."

The court began reiterating more details of the shooting, focusing on the fact that Donez was unarmed during the encounter. The following exchange then occurred:

"THE DEFENDANT: Shot me in the back --

"THE COURT: The record will reflect [defendant] is shouting out in court.

"THE DEFENDANT: Oh my God.

"THE COURT: Since his conviction the defendant while incarcerated has continued with aggressive and threatening and antisocial behavior, specifically with defiant behavior indicating he remains a threat to other human beings, that is consistent with his sexual harassment of a counselor. His fight with another individual in the cell in which he was unscathed, but the other individual was left bloodied and battered. And his own admission raising a fist to a correctional officer, although denying his derogatory—some of his derogatory statements towards that officer, all of which have taken place subsequent to his certifications of technology and law which don't seem to address his aggressive behavior, and have taken place subsequently to his completion of some sort of a substance abuse counseling program in Mexico. [¶] And based upon all of those f[u]rther factors it appears to me it would not be in the interest of justice to grant his motion, and that he poses a danger to the public if that were to be granted."

The court reimposed defendant's original sentence.

### B. *Standard of Review*

A trial court's decision not to dismiss an enhancement pursuant to section 1385 is reviewed for abuse of discretion. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298 (*Mendoza*).) " '[A]n abuse of discretion arises if the trial court based its decision on impermissible factors … or on an incorrect legal standard.' " (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 225 (*Gonzalez*).) "A court acting while unaware of the scope of its discretion is understood to have abused it." (*People v. Tirado* (2022) 12 Cal.5th 688, 694 [reminding that a defendant is entitled to sentencing decisions "made by a court exercising informed discretion."].) "The abuse of discretion standard is highly

deferential." (*Mendoza, supra,* at p. 298.) "That deferential standard asks not whether the trial court's decision was *correct* in the sense that it is the same decision we would have made; rather, it asks whether the court's decision falls within the range of outcomes permitted by the controlling law." (*People v. Bernal* (2019) 42 Cal.App.5th 1160, 1170; *People v. Parra Martinez* (2022) 78 Cal.App.5th 317, 322 [reminding that a discretionary sentencing choice will be upheld "so long as there is a reasonable or even fairly debatable justification" for it.].)

### C.     Analysis

On January 1, 2022, Senate Bill No. 81 (2021-2022 Reg. Sess.) (Senate Bill 81) went into effect (Stats. 2021, ch. 721, § 1), amending section 1385 "to specify factors that the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice." (*People v. Sek* (2022) 74 Cal.App.5th 657, 674.) Section 1385, subdivision (c)(1), provides: "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so …." Subdivision (c)(2) elaborates:

> "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2).)

Subparagraphs (A) to (I) list nine distinct mitigating circumstances. (§ 1385, subd. (c)(2).) Relevant here, subparagraph (B) states that where "[m]ultiple enhancements are alleged in a single case …, all enhancements beyond a single enhancement shall be dismissed." (*Id.* at subd. (c)(2)(B).) Subparagraph (C) states that

12.

where "[t]he application of an enhancement could result in a sentence of over 20 years[,]… the enhancement shall be dismissed." (*Id.* at subd. (c)(2)(C).)

Recently, in *People v. Walker* (2024) 16 Cal.5th 1024 (*Walker*), the California Supreme Court confirmed the operation of this framework for section 1385, stating:

> "[I]f the court does not conclude that dismissal would endanger public safety, then mitigating circumstances strongly favor dismissing the enhancement. But ultimately, the court must determine whether dismissal is in furtherance of justice. This means that, absent a danger to public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that "may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice." (*Walker, supra,* at p. 1036.)

The court cited approvingly a Sixth District case, *People v. Ortiz* (2023) 87 Cal.App.5th 1087 (*Ortiz*), stating the trial court should "exercise its sentencing discretion in a manner consistent with the *Ortiz* court's understanding." (*Walker, supra,* 16 Cal.5th at p. 1036.) The *Ortiz* court, in turn, stated that section 1385 requires a trial court to engage in a "holistic balancing with special emphasis on the enumerated mitigating factors." (*Ortiz, supra,* at p. 1096.)

Since the passage of Senate Bill 81, courts have confronted multiple scenarios demonstrating the bounds for the trial court's exercise of discretion. For example, the *Walker* court ultimately upheld the trial court's refusal to dismiss an enhancement because a dismissal would endanger public safety. (*Walker, supra,* 16 Cal.5th at p. 1038.) Conversely, the Fourth District Court of Appeal found an abuse of discretion in the trial court's refusal to strike a firearm enhancement where the "court's singular focus [was] on whether the defendant *currently* pose[d] a danger." (*Gonzalez, supra,* 103 Cal.App.5th at p. 228.) The *Gonzalez* court reiterated that the sentencing court may rely upon the circumstances of the current offense, as has long been held. (See, e.g., *Mendoza, supra,* 88 Cal.App.5th at p. 298.) However, the court reminded that "a crucial

13.

part of the inquiry is how the dismissal of the enhancement will impact the length of the defendant's sentence." (*Gonzalez, supra,* 103 Cal.App.5th at p. 228.)

Here, the record indicates the trial court engaged in the "holistic balancing" as described in *Ortiz* and approved of in *Walker*, in a sufficiently forward-looking manner, and within the bounds of its discretion. The trial court noted the application of section 1385, subdivisions (c)(2)(B) and (C) to defendant's sentence, stating it gave "great weight to [those] mitigating factors," but finding them outweighed by several opposing factors. To wit, if the firearm enhancements were dismissed, defendant's conviction for murder would result in a term of 15 years to life. At the time of the hearing, defendant was in his early 30's and had already served over nine years in prison. Against this backdrop, we cannot say the court abused its discretion in considering the details of the murder, defendant's evading arrest for five years and use of a false name upon arrest, his multiple rule violations while in prison, and his multiple outbursts at the 2024 resentencing hearing. These facts correlate to a future where defendant could be released from prison in five years' time and thus can support a dangerousness finding for section 1385 purposes. (See *Gonzalez, supra,* 103 Cal.App.5th at p. 228 ["[A] currently dangerous defendant who will be released from prison within a short timeframe might be found by the trial court to pose a greater danger to the public than a defendant who is currently dangerous but who has no prospect of release from prison until he is elderly."].)

To the extent defendant contends the court's inquiry was not sufficiently forward looking and relied too heavily on the circumstances of the murder, we reject this argument. A review of the record, as discussed above, makes it clear the trial court did not limit its inquiry to the circumstances of the murder. Further, the court framed the issue as such: "If the Court finds that it is in the interest of justice, that can be outweighed by a finding that public safety would be endangered if the particular enhancements were dismissed." The general circumstances of the murder and defendant's continued escalation of the conflict were proper considerations on these facts

14.

under a holistic balancing approach. (See, e.g., *Mendoza, supra,* 88 Cal.App.5th at p. 299 [affirming the trial court's consideration of the defendant's " 'incredibly harmful and dangerous conduct' " during the commission of the crime where dismissal of the enhancement would not provide " 'time for the defendant to become rehabilitated' "].)

Defendant also argues the court improperly relied on its own finding of perjury, without supporting evidence and in the face of conflicting evidence, to support its section 1385 determination. We find no error. The record indicates the court was weighing defendant's credibility and supporting evidence that he was attempting to lead a lawful life after the murder and was no longer a violent person. However, the court's statements indicate it did not find defendants assertions credible, and in this context the court discussed defendant's assertions at trial that Donez's actions were gang affiliated. Further supporting its credibility determination, the court noted: (1) defendant's "aggressive and threatening and antisocial behavior, specifically with defiant behavior indicating [defendant] remains a threat to other human beings, that is consistent with his sexual harassment of a counselor," his "fight with another individual in the cell in which he was unscathed, but the other individual was left bloodied and battered"; and his "own admission raising a fist to a correctional officer …"; (2) his uncredible assertions at the 2024 resentencing hearing that prison officials fabricated evidence in his rule violation reports; and (3) the prison education classes that did not "seem to address his aggressive behavior and have taken place subsequently to his completion of some sort of a substance abuse counseling program in Mexico." The trial court was well positioned to assess the credibility and weight of defendant's evidence and testimony. (*People v. Gibson* (2016) 2 Cal.App.5th 315, 329 ["A trier of fact could reasonably conclude that defendant's efforts were not reflective of genuine remorse or rehabilitation."].) The court's discussion of these circumstances, and rejection of defendant's rehabilitation assertions for purposes of section 1385, demonstrate it engaged in a holistic balancing as required

by *Walker* and *Ortiz*. (See *Walker, supra,* 16 Cal.5th at p. 1029; *Ortiz, supra,* 87 Cal.App.5th at p. 1096.)

Finally, to the extent defendant argues that, because section 1385, subdivision (c)(2)(B) and (C) says the relevant enhancement(s) "*shall* be dismissed" (italics added), the trial court had no discretion and was required to dismiss all enhancements except one, we reject this argument. Simply, as the court in *People v. Cota* (2023) 97 Cal.App.5th 318 noted, every published opinion to address this argument has rejected it. (*Id.* at p. 335.)

Given the above, we find no abuse of discretion in the trial court's denial of defendant's section 1385 motion on "interests of justice" and "public safety" grounds for both the section 1385, subdivision (c)(2)(B) and (C) enhancements. (See *Walker, supra,* 16 Cal.5th at p. 1029; *Ortiz, supra,* 87 Cal.App.5th at p. 1096; see also *People v. Bernal, supra,* 42 Cal.App.5th at p. 1170 ["That deferential standard asks not whether the trial court's decision was *correct* in the sense that it is the same decision we would have made; rather, it asks whether the court's decision falls within the range of outcomes permitted by the controlling law."]; *People v. Parra Martinez, supra,* 78 Cal.App.5th at p. 322 [reminding that a discretionary sentencing choice will be upheld "so long as there is a reasonable or even fairly debatable justification" for it].)

**DISPOSITION**

The judgment is affirmed.

FRANSON, J.

WE CONCUR:

DETJEN, Acting P. J.

PEÑA, J.

16.